Donald H. Nichols (MN State Bar No. 78918)
(admitted **pro hac vice**)
Paul J. Lukas (MN State Bar No. 22084X)
(admitted **pro hac vice**)
NICHOLS KASTER, PLLP
4600 IDS Center
80 S. 8th Street
Minneapolis, MN 55402

Bryan J. Schwartz, CA State Bar No. 209903
Matthew C. Helland, CA State Bar No. 250451
NICHOLS KASTER, LLP
One Embarcadero Center, Ste. 720
San Francisco, CA 94111

Robert S. Norell, P.A.
robnorell@aol.com
(admitted **pro hac vice**)
7350 N.W. 5th Street
Plantation, FL 33317

Attorneys for Individual and Representative Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Samson Lew, on behalf of himself and classes of those similarly situated,

Plaintiffs,

vs.

Countrywide Financial Corporation; Countrywide Bank, FSB, Full Spectrum Lending Division; Countrywide Bank, N.A.; Countrywide Home Loans, Inc., and their respective affiliates and parents and subsidiaries, and DOES 1-50,

Defendants.

**Case No. CV 08 1993 SC**

**PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO STAY ALL PROCEEDINGS, INCLUDING DISCOVERY, AND FOR EQUITABLE TOLLING DURING THE STAY**

**Hearing Date: February 20, 2008**
**Time: 10:00 a.m.**
**Courtroom: 1**
**Judge: Hon. Samuel Conti**

**Complaint Filed: May 7, 2008 (Amended)**

## TABLE OF CONTENTS

**MEMORANDUM OF LAW AND POINTS OF AUTHORITIES** .......... **1**

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **2**

**I. The Court Should Grant a Stay in this Case Because *Brinker* Will Affect the Outcome of This Case and the *Landis* Factors Weigh in Favor of a Stay** .......... **2**

**a. The Court Should Use Reasoning Similar to the Reasoning Used in *Gabriella* and Stay this Action** .......... **2**

**b. *Brinker* Will Affect the Vast Majority of Plaintiff's Claims** .......... **3**

**c. The Parties' Discovery Stipulations Do Not Render This Motion Moot** .......... **4**

**d. Courts Have Stayed Proceedings in One Case Pending the Resolution of Another Case Involving Different Litigants** .......... **4**

**e. Defendants Misrepresent the Standard for Granting a Stay** .......... **5**

i. Defendants cite cases that do not apply here to support their supposed "extraordinary" standard .......... **5**

ii. Defendants erroneously add a fourth factor to the three factor *Landis* test .......... **6**

**f. Litigating Without a Clear Legal Standard Will Cause Hardship to Plaintiff** .......... **7**

i. At present, Plaintiff does not know what he will have to prove to find Defendants liable .......... **7**

ii. Discovery could take several different courses, depending upon the Court's ruling in *Brinker* .......... **8**

**g. Defendants Have Not Shown That a Stay Will Cause Hardship** .......... **9**

i. A stay pending *Brinker* will be Definite in Length .......... **9**

ii. It serves judicial economy for Defendants to wait to challenge the class definition until the standard is clear .......... **11**

**II. The Court Should Grant Equitable Tolling in Order to Avoid Prejudice to Putative Class Members in Their FLSA Claims** .......... **11**

**a. Courts Have Granted Equitable Tolling in Cases Where Circumstances Beyond the Plaintiffs' Control Make it Impossible to File a Claim on Time .......... 11**

**b. Defendants Cite Cases Involving Criminal Proceedings, Which are Procedurally and Factually Distinct from the Present Case .......... 12**

**c. Equitable Tolling Will Not Cause Hardship to Defendants, but Rather, Will Counter the Unfair Advantage Defendants Would Otherwise Gain by Withholding Contact Information of Putative Class Members .......... 13**

**CONCLUSION .......... 13**

## TABLE OF AUTHORITES

**Federal Cases**

***Adams v. Inter-Con Sec. Systems, Inc.,***
2007 WL 1089694 (N.D. Cal. April 11, 2007) .......... 13

***Ashby v. Farmers Group, Inc.,***
2006 WL 3169381 (D. Or. Oct. 30, 2006) .......... 5

***Attwood v. Mendocino Coast Dist. Hops.,***
886 F.2d 241 (9th Cir. 1989) .......... 12

***Baldwin Cty. Welcome Ctr. v. Brown,***
466 U.S. 147 (1984) .......... 13

***Beauperthuy v. 24 Hour Fitness USA, Inc.,***
2007 WL 707475 (N.D. Cal. Mar. 6, 2007) .......... 12

***Boeing Co. v. U.S.,***
75 Fed. Cl. 34 (Fed. Cl. 2007) .......... 10

***Brinker Rest. Corp. et. al. v. Superior Court of San Diego County,***
*Pet. For review granted*
(Oct. 22, 2008), 80 Cal. Rptr. 3d 781 (Cal. Ct. App. 2008) .......... *passim*

***Cicairos v. Summit Logistics, Inc.,***
35 Cal. Rptr. 3d 243 (Cal. Ct. App. 2005) .......... 9

***CMAX, Inc. v. Hall,***
300 F.2d 265 (9th Cir. 1962) .......... 6

***Dellums v. Smith,***
577 F.Supp. 1456 (N.D. Cal. 1983) .......... 7

***Gabriella, et. al. v. Wells Fargo Financial, Inc., et. al.,***
Case No. C 06-4347 (N.D. Cal. Jan. 26, 2009) .......... 2,3,5

***Golden Gate Rest. Assoc. v. City and County of San Francisco,***
512 F.3d 1112 (9th Cir. 2008) .......... 6-7

***Gruening v. Shell Oil Pros. Co.,***
1998 WL 473895 (N.D. Cal. July 31, 1998) .......... 5

***Hilton v. Braunskill,***
481 U.S. 770 (1987) .......... 5

***Holland v. Florida,***
539 F.3d 1334 (11th Cir. 2008) .......... 12

***In re Wilson,***
442 F.3d 872 (5th Cir. 2006) .......... 12

***IO Group, Inc. v. Veoh Networks, Inc.,***
586 F.Supp.2d 1132 (N.D. Cal. 2008) .......... 2

***Klein v. Adams & Peck,***
436 F.2d 337 (2d Cir. 1971)....................................................................................6

***Landis v. N. Am Co.,***
299 U.S. 248 (1936)...............................................................................................2,6,7,10

***Lockyer v. Mirant Corp.,***
398 F.3d 1098 (9th Cir. 2005)...............................................................................6

***Medical Imaging Ctrs. Of Am., Inc. v. Lichtenstein,***
917 F.Supp. 717 (S.D. Cal. 1996)..........................................................................9

***Pace v. DiGuglielmo,***
544 U.S. 408 (2005)...............................................................................................12,13

***Philadelphia Reserve Supply Co. v. Nowalk & Assoc.,***
864 F.Supp. 1456 (E.D. Pa. 1994)..........................................................................10

***Sierra Club v. Van Antwerp,***
560 F.Supp.2d 21 (D.D.C. 2008)............................................................................7

***United States v. McKenzie,***
697 F.2d 1225 (5th Cir. 1983)................................................................................7

***Walsh Sec. v. Cristo Prop. Mgmt.,***
7 F.Supp.2d 523 (D.N.J. 1998)...............................................................................6

***Woods v. Mitchell Bros. Truck Line, Inc.,***
2008 WL 496803 (Wash. Ct. App. Feb. 26, 2008)..................................................5

***York v. Galetka,***
314 F.3d 522 (10th Cir. 2003)................................................................................12

***Young v. INS,***
208 F.3d 1116 (9th Cir. 2000)................................................................................5,10,12

**Statutes**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68..........10
Securities Exchange Act of 1934, 15 U.S.C. § 78...................................................6
Reform Act, 15 U.S.C. § 78(u)-4(b)(3)(B)...............................................................9

Cal. Lab. § 226.7.......................................................................................................3
California Labor Code § 226(a)................................................................................3
California Labor Code § 510.....................................................................................3

**Federal Rules**

Fed.R.Civ.P. 23.........................................................................................................8,9

**Other Authorities**

IWC Wage Order No. 4 (8 C.C.R. § 11040)..............................................................3
Unfair Competition Act, Business and Professions Code § 17200 *et seq*. ...................3

## MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

## INTRODUCTION

Because the California Supreme Court has granted review of *Brinker Rest. Corp. et. al. v. Superior Court of San Diego County*, it would be prudent for the Court to stay this action pending that decision. *Pet. for review granted* (Oct. 22, 2008), 80 Cal. Rptr. 3d 781 (Cal. Ct. App. 2008). The California Supreme Court's ruling in *Brinker* will likely determine, amongst other things: (1) whether this action proceeds as a class action, (2) whether Defendants violated California law by requiring employees to work more than five hours before taking a meal break, (3) whether Defendants owe Plaintiffs meal and rest period premiums, and (4) the scope of discovery in this action. Contrary to Defendants' assertions, it is not the fact of having to continue to litigate this case that will cause hardship to Plaintiff. Rather, continuing to litigate this case without knowing the legal standard, only to have to re-visit discovery, class certification, dispositive motions, jury instructions, and trial, once that standard is determined, will cause hardship to Plaintiff. Conversely, Defendants have not shown that the requested stay would harm them in any way.

Additionally, the Court should equitably toll Plaintiffs and putative class members' Fair Labor Standard Act Claims ("FLSA") during the stay, because a failure to do so would cause prejudice to the vast number of putative class members who remain ignorant of their claims. Without tolling, many of these putative class members, through no fault of their own, would lose the ability to pursue their claims altogether. Therefore, the Court should grant Plaintiff's Motion to Stay All Proceedings, Including Discovery, and for Equitable Tolling During the Stay.

## ARGUMENT

### I. The Court Should Grant a Stay in this Case Because *Brinker* Will Affect the Outcome of This Case and the *Landis* Factors Weigh in Favor of a Stay.

#### a. The Court Should Use Reasoning Similar to the Reasoning Used in *Gabriella* and Stay this Action.

This Court recently granted a stay pending *Brinker* in a case similar to this one, stating that "the Supreme Court's decision in *Brinker* will significantly determine the course of this litigation." *Gabriella, et. al. v. Wells Fargo Fin., Inc., et. al.,* Case No. C 06-4347 (N.D. Cal. Jan. 26, 2009) (Pl.'s Notice Supp. Auth., Exhibit A, Dkt. # 114.)[1] As in the present case, the plaintiffs in that case argued "a stay of proceedings, including all discovery, [was] prudent because the scope of discovery will depend on the outcome in *Brinker*," and the Court "largely agree[d] with plaintiffs." *Id.* In granting the stay, the Court reasoned that "the parties will seek, and be willing to provide, different discovery depending on the Supreme Court's guidance in *Brinker*[;]. . . . [o]nce the Supreme Court resolves the legal standard governing meal and rest break claims, the parties will be able to engage in focused, efficient discovery." *Id.*

---

[1] Defendants have objected to Plaintiff's Notice of Supplemental Authority on several grounds. (*See* Defs.' Obj. Pl.'s Notice Supp. Auth.) Plaintiff responds as follows:

- Defendants argue that Exhibit A is not persuasive authority. (*Id.* at ¶ 2.) This Court has previously considered unpublished opinions in its analysis of a case. *See, e.g., IO Group, Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132, 1145 (N.D. Cal. 2008) (considering an unpublished opinion in its analysis). The Court will ultimately determine to what extent it finds the reasoning in Exhibit A persuasive here.
- Defendants object on the grounds that Exhibit A was not "published after the date the opposition or reply was filed" as stated in Civil Local Rule 7-3(d). (Defs.' Obj. Pl.'s Notice Supp. Auth. ¶ 3.) ( Plaintiff reads the rule to mean that because Exhibit A was not issued after the date of the opposition or reply, Plaintiff did not have an affirmative obligation to serve it on Defendants. However, Plaintiff did so as a courtesy to Defendants. Alternatively, L.R. 7-3(d) may not even apply to Exhibit A, as the rule mentions only "published" opinions.
- Defendants point out that Plaintiff filed a "Notice of Supplemental Authority" rather than a "Statement of Recent Decision." (Defs.' Obj. Pl.'s Notice Supp. Auth. ¶ 4.) Plaintiff does not believe that the variation in the caption has caused confusion to Defendants. Moreover, as stated above, it is not clear whether L.R. 7-3(d) applies to Exhibit A.
- Defendants argue that Plaintiff should have requested judicial notice of Exhibit A pursuant to Federal Rule of Evidence 201. (Defs.' Obj. Pl.'s Notice Supp. Auth. ¶ 5.) Defendants also object on the same grounds to Schwartz Dec. Exhibits 2 and 4. (Defs.' Obj. Evid. Submitted. ¶¶ 2, 4.) Rule 201 applies to "adjudicative *facts*." (emp. added.) Exhibit A is not a fact, but an opinion.

As to the remaining objections the Defendants made that Plaintiffs have not addressed here, Plaintiffs are prepared to discuss them at the hearing for this motion if the court deems it necessary. (*See* Defs.' Obj. Pl.'s Notice Supp. Auth., Dkt. # 118; Defs.' Obj. Evid. Submitted, Dkt. #117.)

As in *Gabriella*, the *Brinker* decision will greatly impact the course of this litigation. In deciding *Brinker*, the California Supreme Court will decide issues central to this case: to what extent an employer has an affirmative obligation to ensure employees take meal and rest break periods in order to avoid paying premiums under Cal. Lab. § 226.7, and whether employees may work in excess of five hours without a meal break. The California Supreme Court's ruling on these issues will likely determine, amongst other things: (1) whether this action proceeds as a class action, (2) whether Defendants violated California law by requiring employees to work more than five hours before taking a meal break, (3) whether Defendants owe Plaintiffs meal and rest period premiums, and (4) the scope of discovery in this action. Because *Brinker* will affect the central issues in this case, the Court should apply reasoning similar to the reasoning used in *Gabriella* and stay this action.

b. ***Brinker* Will Affect the Vast Majority of Plaintiff's Claims.**

Defendants argue that "*Brinker* only addresses issues specific to the meal and rest break claims alleged in the First Claim for Relief and does not resolve the overtime and other claims asserted separately in this action . . . ." (Defs.' Opp. Pl.'s Mot. Stay 5-6.) Defendants' assessment is inaccurate. Plaintiff's Second through Fifth Claims for relief derive directly from his meal and rest break claims, and will turn upon the same factual findings and legal standards as the First.

With respect to the Second Claim for Relief (waiting time penalties), whether Defendants unlawfully withheld wages depends entirely upon whether Defendants owes Plaintiff wages due to missed meal and rest breaks under *Brinker*. That is, if Defendants owe Plaintiff no wages, then Plaintiff has no waiting time penalty claim. Plaintiff's other claims for relief under California law – failure to provide itemized wage statements pursuant to California Labor Code § 226(a), unfair competition under the Unfair Competition Act, Business and Professions Code § 17200 *et seq*, and failure to pay overtime compensation in violation of IWC Wage Order No. 4 (8 C.C.R. §

11040) and California Labor Code § 510 – will also involve the same factual findings and derive from Plaintiff's meal and rest break claims. Because the California Supreme Court's decision will determine the vast majority of the issues in this case, and because it serves judicial economy to try all of Plaintiff's claims stemming from the same facts together, the Court should stay this action.

c. **The Parties' Discovery Stipulations Do Not Render This Motion Moot.**

Defendants argue that halting discovery will serve no useful purpose in this case because of the recent discovery stipulations to which the parties agreed and the Court's extension of Plaintiff's deadline to file a motion for certification. (Defs.' Opp. Pl.'s Mot. Stay 11.) Defendants' logic and conclusion are flawed. The discovery stipulations and extended deadline do not solve the problem of litigating this case without a clear legal standard, as will be discussed below. Rather, the discovery stipulations and extension remedy only the deficiency and delay of Defendants' responses to Plaintiff's discovery requests and lack of cooperation with respect to scheduling manager depositions. (*See* Schwartz Dec. ¶ 2; Pl.'s Mot. Compel, Dkt. # 84, 87.)

It is not contradictory for Plaintiff to move forward with this case while the motion to stay is pending. (*See* Breen Dec., Ex. 12.) Plaintiff does not know for certain that the Court will grant the stay, and in the event that the stay is denied, Plaintiff must be prepared to argue his motion for class certification by May 29, 2009, and submit his memorandum and reply well in advance of that date. (*See* Breen Dec., Ex. 11.) With an upcoming deadline for certification, counsel for Plaintiff would not be fulfilling their obligations of diligent representation if they fail to pursue discovery until and unless a stay is granted.

d. **Courts Have Stayed Proceedings in One Case Pending the Resolution of Another Case Involving Different Litigants.**

Defendants attempt to distinguish cases relied upon by Plaintiffs by pointing out that some of them involved a stay pertaining to proceedings involving the *same* parties. (Defs.' Opp. Pl.'s

Mot. Stay 13-14.) However, Plaintiff has cited numerous cases where courts have stayed the proceedings pending a decision in an unrelated case involving *different* litigants, but addressing a relevant issue. (*See* Pl.'s Mot. Stay 4-5); *Gabriella, et. al. v. Wells Fargo Fin., Inc. et. al*, Case No. C 06-4347 (Schwartz Dec., Ex. 2) (granting the plaintiffs motion to stay pending the California Supreme Court's ruling in another case involving different litigants); *Gruening v. Shell Oil Pros. Co.*, 1998 WL 473895, at *3 (N.D. Cal. July 31, 1998) (staying proceedings pending the California Supreme Court's ruling on a relevant issue in a separate case with different litigants); *Ashby v. Farmers Group, Inc.*, 2006 WL 3169381, at *1 (D. Or. Oct. 30, 2006) (granting a stay pending the resolution of the united states supreme Court involving different litigants); *Woods v. Mitchell Bros. Truck Line, Inc.*, 2008 WL 496803, at *1 (Wash. Ct. App. Feb. 26, 2008) (granting a stay pending a decision from the Washington Supreme Court involving different litigants). As in those cases, the Court should stay this action because the *issues* to be decided in *Brinker* (a case involving different litigants) directly affect the outcome of this case.

e. **Defendants Misrepresent the Standard for Granting a Stay.**

i. Defendants cite cases that do not apply here to support their supposed "extraordinary" standard.

To support their proposition that the Court should only grant a stay in "extraordinary" circumstances, Defendants cite a case where the court was considering whether to release a state prisoner pending appeal of a district court order granting habeas relief. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Cases involving habeas relief "implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy." *Young v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000). Unlike *Hilton*, the Court's here does not have to consider special constitutional protections for a criminal defendant. Instead, the most important concern here is the prudency of staying this action in light of the circumstances. Thus,

*Hilton* is inapplicable here.

The other cases that Defendants cite to support their supposed "extraordinary" standard are distinguishable as well. In *Walsh Sec. v. Cristo Prop. Mgmt.*, the court considered the "stay of a civil case where there [were] pending criminal proceedings." 7 F.Supp.2d 523, 526 (D.N.J. 1998). The court's analysis was confined to that specific factual setting, and does not apply here. *See id.*

Defendants also cite *Klein v. Adams & Peck*, a case involving a violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78, where the district court stayed the plaintiff from proceeding in several actions against the same Defendants until the plaintiff posted a bond to cover potential liability for legal fees. 436 F.2d 337, 339 (2d Cir. 1971). The appellate court reversed, finding there was not a sufficient showing that such extreme circumstances existed such that the plaintiff should be prohibited from proceeding. *Id.* Unlike that case, the present case does not involve concerns regarding an extremely litigious plaintiff. *See id.* In contrast, Plaintiffs in this case aim to conserve judicial resources and avoid unnecessary proceedings.

ii. <u>Defendants erroneously add a fourth factor to the three factor *Landis* test.</u>

In determining whether to grant a stay in a civil case, the United States Supreme Court has clearly laid out, and the Ninth Circuit has applied, three factors:

> [1] the possible damages [to the non-moving party] which may result from the granting of a stay,
> [2] the hardship or inequity which a party may suffer in being required to go forward, and
> [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am Co.*, 299 U.S. 248, 254-55 (1936)). The Ninth Circuit has repeatedly affirmed the *Landis* test as the appropriate analysis for deciding whether to grant a stay. *See, e.g., Lockyer v. Mirant Corp.*, 398 F.3d 1098,

1110 (9th Cir. 2005) (applying *Landis* factors in deciding a motion to stay); *Golden Gate Rest. Assoc. v. City & County of San Francisco*, 512 F.3d 1112 (9th Cir. 2008) (same).

Rather than applying the proper three-factor *Landis* test, Defendants ask the court to use a different one. Defendants essentially add a fourth factor: whether the movant has made a showing of likelihood of success on the merits. (Defs.' Opp. Pl.'s Mot. Stay 5). In support of this fourth element, Defendants point to cases from the Fifth Circuit and the District of Columbia. *Id.*; *United States v. McKenzie*, 697 F.2d 1225, 1226 (5th Cir. 1983); *Sierra Club v. Van Antwerp*, 560 F.Supp.2d 21 (D.D.C. 2008). In light of the Ninth Circuit's repeated and established use of the *Landis* test discussed in the preceding paragraph, these cases cited by Defendant hold no weight.

Defendants point to only one California case that discusses this so-called fourth element, a case which is entirely inapposite here. (Defs.' Opp. Pl.'s Mot. Stay 5.); *Dellums v. Smith*, 577 F.Supp. 1456, 1457 (N.D. Cal. 1983). *Dellums* involved a mandamus action seeking an order to compel the Attorney General to conduct a preliminary investigation into private citizens' allegations of federal criminal law violations of executive branch officials. *Dellums*, 577 F.Supp. at 1457. *Dellums* is factually distinct and has no bearing on this case. *See id.*

For these reasons, the Court should apply this *Landis* factors in deciding this motion, and disregard the fourth element that Defendants propose.

f. **Litigating Without a Clear Legal Standard Will Cause Hardship to Plaintiff.**

i. <u>At present, Plaintiff does not know what he will have to prove to find Defendants liable.</u>

Plaintiff will suffer hardship not by continuing to litigate this case in and of itself, but rather, by continuing to litigate without knowing what legal standard will apply after *Brinker* is decided. Plaintiff will seek (and Defendants will provide) different information in discovery depending on the applicable legal standard. *Brinker* will determine *who* Plaintiff deposes, *how*

*many* deponents are needed, *whether* they depose certain co-workers and managers at all, and for those that they choose to depose, *which* questions they will ask. Variation will also exist in *which documents* Plaintiff seeks and *why*.

Defendants contend that "Plaintiff filed suit despite common knowledge of the eventuality *Brinker* would be reviewed by the California Supreme Court; therefore, he cannot claim a hardship . . ." (Defs.' Opp. Pl.'s Mot. Stay 6.) Defendants have the facts wrong. At the time Plaintiff filed suit, the California Court of Appeals had not even decided *Brinker* yet. Plaintiff Lew originally filed this action on April 16, 2008, and filed the Amended Complaint on May 7, 2008. (*See* Dkt. #1, 14.) The California Court of Appeals did not decide *Brinker* until July 22, 2008, and the Supreme Court did not grant review until October 22, 2008. *Pet. for review granted* (Oct. 22, 2008), 80 Cal. Rptr. 3d 781 (Cal. Ct. App. 2008). Since review of *Brinker* was granted, it is now certain that the California Supreme Court will resolve the split of authority in the lower courts regarding meal and rest breaks and clarify the legal standard. Until that standard is known, however, Plaintiff remains in the dark.

ii. Discovery could take several different courses, depending upon the Court's ruling in *Brinker*.

There are at least three distinct scenarios which could result from the *Brinker* decision. First, the Supreme Court could affirm the appellate court's decision and hold that employers must only "make available" such breaks to employees. *See id.* at 806. In order to find Defendants liable, Plaintiffs would have to show not only that they missed meal and rest breaks, but that they did so involuntarily. *See id.* Deposition questions would involve Plaintiffs' mental state and motivations. Likewise, Plaintiffs' written discovery would focus on the *reasons* that Plaintiffs missed such breaks. The inquiries would be significantly individualized. (*See* Pl.'s Notice Supp. Auth., Ex. A.) Additionally, because Plaintiff may not move for Class certification under this scenario, discovery might not involve any class issues, and Plaintiff's counsel would not need to

inquire about Rule 23 class certification factors. *See* Fed. R. Civ. P. 23.

Alternately, the Supreme Court could reverse *Brinker* and follow the line of cases suggesting that an employer has an affirmative obligation to ensure that employees take their meal and rest breaks. *See Cicairos v. Summit Logistics, Inc.*, 35 Cal. Rptr. 3d 243, 252-53 (Cal. Ct. App. 2005). The focus of Plaintiff's discovery would then shift. The reasons that Plaintiff's missed meal and rest breaks and individual states of mind would become less relevant. Plaintiff's burden of proof would be lower. Plaintiff would certainly move for class certification and discovery would investigate factual matters relevant to the Rule 23 factors (numerosity, commonality/predominance, typicality, and adequacy of representation). *See* Fed. R. Civ. P. 23.

Under a third scenario, the Supreme Court might set a new standard for California meal and rest break law. In that case, Plaintiff would have even less information about what is necessary to prove defendants' liability, and therefore, what information to seek in discovery. Since the scope of discovery will likely change after *Brinker* is decided, if the parties proceed with discovery at present, they will likely have to conduct duplicative discovery once *Brinker* is decided

g. **Defendants Have Not Shown That a Stay Will Cause Hardship.**

i. <u>A stay pending *Brinker* will be Definite in Length.</u>

Defendants attempt to apply a completely inapplicable standard, implying that Plaintiff must show that this stay will not cause "undue prejudice," which is "less than irreparable harm." (Defs.' Opp. Pl.'s Mot. Stay 7) (citing *Medical Imaging Ctrs. Of Am., Inc. v. Lichtenstein*, 917 F.Supp. 717, 720 (S.D. Cal. 1996)). Defendants extrapolate the "undue prejudice" standard from a securities case in which the court had stayed the motion pursuant to Section 21D(b)(3)(B) of the Reform Act, 15 U.S.C. § 78(u)-4(b)(3)(B). *See Med. Im. Ctr.* at 719. The "undue prejudice" standard of Section 21D(b)(3)(B) is *entirely* inapplicable here. This is not a securities case, and Plaintiff does not seek a stay pursuant to Section 21D(b)(3)(B) of the Reform Act.

Defendants' claim of hardship rests largely on its contention that this stay will last too long. (Defs.' Opp. Pl.'s Mot. Stay 8-9.) In support of this contention, Defendants cite *Philadelphia Reserve Supply Co. v. Nowalk & Assoc.*, 864 F.Supp. 1456 (E.D. Pa. 1994), stating that delay in that case "convinced a federal court to deny a request for stay pending a state court decision." (Defs.' Opp. 8.) Defendants' statement of that case's holding is just plain wrong. In that case, the federal court did not deny a request for a stay because *none of the parties even requested a stay* in that case. *See Philadelphia*, 864 F.Supp. at 1461, n.6. The judge merely mentioned in a footnote that he thought it was best to decide the issue (under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68) in that case sooner rather than later. *See Philadelphia*, 864 F.Supp. at 1461, n.6.

Regardless, the stay in this case will not be "indefinite." (Defs.' Opp. Pl.'s Mot. Stay 9.) (quoting *Young v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000)). This stay will be definite in length: as soon as the Supreme Court issues a decision in *Brinker*, the stay in this case would be lifted. It is entirely "within the bounds of moderation" to conserve both the parties' and the Courts' resources by staying this action and avoiding duplicative discovery. *See Landis*, 299 U.S. at 256. Even if this action is stayed for over a year, that would not necessarily be unreasonable. *See, e.g.*, *Boeing Co. v. U.S.*, 75 Fed. Cl. 34, 41 (Fed. Cl. 2007) (stay lasted over seven years and the parties conducted no discovery during the stay, pending the resolution of proceedings in another case).

Defendants discuss several other potential sources of hardship. They point to the merger of Countrywide and Bank of America in July of 2008, as the cause of increasing difficulty for Defendants to locate documents and witnesses. (*See* Defs.' Opp. Pl.'s Mot. Stay 9.) This hardship stems *from Defendants' own actions*, entirely independent of this lawsuit. Because Defendants have brought this hardship upon itself and the stay itself would not impose this hardship, this is no reason to deny the stay. Even if the passage of time caused Defendants to spend more money in order to locate witnesses, putative class members, and documents, this would likely be offset

by the resources Defendants (as well as Plaintiffs and the Court) will save by avoiding duplicative discovery and engaging in more focused discovery once *Brinker* is decided. (*See* Pl.'s Notice Supp. Auth., Ex. A.) Defendants also complain about fading witness' memories. (*See* Defs.' Opp. Pl.'s Mot. Stay 9.) To the extent that this occurs, it would affect both Defendants and Plaintiff equally, and so it cannot be considered a hardship on Defendants.

ii. <u>It serves judicial economy for Defendants to wait to challenge the class definition until the standard is clear.</u>

Defendants argue that "judicial economy would not be served by denying Defendants . . . the opportunity to conduct discovery in order to establish" their contention that "nearly one-third of the seventy 'opt-in' putative class members do not fit the definition of the class or collective action." (*See id.* at 11.) Defendants' argument is flawed. It will likely *serve* judicial economy for Defendants to wait to challenge the class definition until after *Brinker* is decided, because *Brinker* will likely affect the constitution of the class.

Under one scenario, if the California Supreme Court determines that employers have no affirmative duty to ensure that employees take meal breaks, then the reasons that employees missed breaks will be important to determining whether a particular employee has a claim. The class may be significantly smaller under this scenario, because the class would not include those who voluntarily waived meal and/or rest breaks. *See Brinker*, 80 Cal. Rptr. 3d at 806-07. On the other hand, if an employer must ensure that breaks are taken, then those same employees would be part of the class. *See id.* By waiting until *Brinker* is decided to determine who meets the class definition, judicial economy will be served because it will be far more efficient to conduct this analysis once the standard is clear.

## II. <u>The Court Should Grant Equitable Tolling in Order to Avoid Prejudice to Putative Class Members in Their FLSA Claims.</u>

### a. Courts Have Granted Equitable Tolling in Cases Where Circumstances Beyond the Plaintiffs' Control Make it Impossible to File a Claim on Time.

The purpose behind a stay of litigation pending external events is to toll limitations periods and prevent prejudice to one or both parties from continuing litigation. *Attwood v. Mendocino Coast Dist. Hops.*, 886 F.2d 241, 244-46 (9th Cir. 1989). Should the Court grant the stay here, the vast majority of putative class members will have no knowledge of their claims prior to the issuance of *Hoffman-LaRoche* notice. If the Court does not apply equitable tolling, those individuals will suffer prejudice. It "would be unfair or unjust to allow" people who already were included in the case to collect for violations in an earlier period of time than those who, through no fault of their own, had not received any notice of the matter. *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475, at *8 (N.D. Cal. Mar. 6, 2007).

Defendants argue that "[t]he application of the statute of limitations in this case would not be inequitable because Plaintiff was fully aware of *Brinker* when he filed this action and made a calculated decision to proceed." (Defs.' Opp. Pl.'s Mot. Stay 13.) As discussed above, Defendants are wrong about this: Plaintiff Lew filed this case *before* the California Court of Appeals decided *Brinker* (and also before the Supreme Court granted review of *Brinker*). Moreover, even if the timing had been different, Defendants' focus on the named Plaintiff ignores the prejudice to numerous putative class members who remain ignorant of their FLSA claims.

**b. Defendants Cite Cases Involving Criminal Proceedings, Which are Procedurally and Factually Distinct from the Present Case.**

In their discussion of equitable tolling, all but one of the cases cited by Defendants involve filing deadlines for habeas corpus relief. *See Holland v. Florida*, 539 F.3d 1334, 1338 (11th Cir. 2008) (defendant missed the filing deadline for habeas relief); *York v. Galetka*, 314 F.3d 522, 527 (10th Cir. 2003) (same); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (same); *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (applying equitable tolling to the authorization to file a successive application for a writ of habeas corpus). As mentioned above, special considerations in cases involving the filing of a habeas petition render these cases inapplicable to

the equitable tolling issue in this case. *See Young*, 208 F.3d at 1119.

Defendants point to one case that does not involve a habeas petition, a case which is also factually distinct from the present matter. (Defs.' Opp. Pl.'s Mot. Stay 12.) *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984). *Baldwin* deals with the Plaintiff's failure to timely file the complaint after receiving a right to sue letter. *Id.* at 148-49. Defendants cite *Baldwin* for the proposition that absence of prejudice alone is not an independent basis for invoking equitable tolling. (Defs.' Opp. Pl.'s Mot. Stay 12.) On that basis, *Baldwin* does not support the denial of equitable tolling here. While lack of prejudice is one point Plaintiff makes, Plaintiff has laid out other reasons that warrant equitable tolling here.

c. **Equitable Tolling Will Not Cause Hardship to Defendants, but Rather, Will Counter the Unfair Advantage Defendants Would Otherwise Gain by Withholding Contact Information of Putative Class Members.**

Defendants deny having interfered with Plaintiff's progress in contacting putative class members, pointing to the more than seventy opt-in plaintiffs as evidence of this. Defendants' contention is absurd. The fact that Plaintiff has already gained numerous opt-ins simply attests to Plaintiff's diligence in pursuing his claims, a fact which, as Defendants point out, supports equitable tolling. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Plaintiff's diligence does not negate the fact that Defendants, who are in possession of the names and contact information of all putative class members, have thus far refused to provide such information to Plaintiff. (*See* (*See* Pl.'s Mot. Compel, Dkt. #84, 87.) Thus, equitable tolling is appropriate and necessary in this case to "counter[] the advantage defendants would otherwise gain by withholding potential Plaintiffs' contact information until the last possible moment." *Adams v. Inter-Con Sec. Systems, Inc.*, 2007 WL 1089694, at *11 (N.D. Cal. April 11, 2007).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court stay all proceedings in this action, including further discovery, and issue an equitable tolling order for all

putative FLSA collective class members, until the California Supreme Court issues a decision in *Brinker*.

Dated: February 6, 2009

s/_Matthew Helland_______________

Matthew Helland, CA State Bar No. 250451
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7236
Facsimile: (415) 277-7238

**ATTORNEYS FOR PLAINTIFFS**